UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TIMOTHY CASEY,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. 2:18-cv-00546-EJY<br><br>**ORDER**<br><br>Re: Motion for Summary Judgment and/or Remand (ECF No. 16) |

Plaintiff Timothy Casey ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, respectively. For the reasons stated below, the Commissioner's decision is reversed, and this case is remanded for further proceedings consistent with this Order.

## I. BACKGROUND

On September 3, 2013 and on February 7, 2014, Plaintiff filed applications for DIB and SSI, respectively, alleging onset of disability beginning June 15, 2009. Administrative Record ("AR") 162–63, 175–86. The Commissioner denied Plaintiff's Title II claims by initial determination on February 5, 2014, and again upon reconsideration on May 29, 2014. AR 60–92. On July 21, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 101–02. After considering both of Plaintiff's Title II and XVI claims at an administrative hearing on March 9, 2016 (AR 24–52), ALJ Sharilyn Hopson issued her determination that Plaintiff was not disabled on March 28, 2016 (AR 7–19). On April 13, 2016, Plaintiff requested that the Appeals Council review the decision by the ALJ. AR 159–160. On January 23, 2018, the Appeals Council denied Plaintiff's

---

[1] Andrew Saul is the current Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

request for review. AR 1–5. Upon denial of Plaintiff's request for review by the Appeals Council, the ALJ's March 28, 2016 decision became the final order of the Commissioner. 42 U.S.C. § 405(h).

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id.*

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R.

§§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098–99 (internal alterations omitted).

## B. <u>Summary of ALJ's Findings</u>

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since June 15, 2009, the alleged onset date of disability. AR 12. At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "right wrist De Quervain's tenosynovitis; mild tenderness of the sacroiliac joints; paraspinal right scapular tenderness to palpation; degenerative disc disease with bilateral foraminal stenosis; plantar fasciitis; bilateral carpal tunnel with bilateral releases; osteoarthritis of bilateral thumbs; status post excision of neuroma fourth interspace left foot; and neuropathy of bilateral wrists."[2] *Id*. At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of any "listed" impairment in 20 C.F.R., Part 404, Subpart ("Subpt.") P, Appendix ("App.") 1. AR 14–15.

In preparation for step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to:

> [P]erform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) and SSR [Social Security Ruling] 83-10 specifically as follows: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday; he can sit for six hours out of an eight-hour workday; he requires the use of a cane as needed and the ability to the ability [sic] to stand and stretch every hour, estimated to take one to three minutes per hour; he can frequently climb stairs; he can occasionally climb ladders, ropes and scaffolds; he can frequently balance, stoop, kneel, crouch, and crawl; and he is limited to frequent fine and gross manipulation.

AR 15.

---

[2] Although immaterial to this Court's decision today, the ALJ properly found that Plaintiff's "status post appendectomy and minimal hematuria . . . would have no more than a minimal effect on his ability to work." AR 13. The ALJ also appropriately consulted the four functional areas set out in the disability regulations for evaluating mental disorders under section 12.00C of the Listing of Impairments (20 C.F.R. Part 404, Subpt. P, App. 1, otherwise known as the "paragraph B" criteria) in finding that Plaintiff's "substance abuse disorder, depression and anxiety disorder" caused no more than minimal limitation in his ability to work and was, therefore, nonsevere. *Id*.

[3] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

4

At step four, the ALJ determined that "[t]he claimant is capable of performing past relevant work as a human services companion and copy clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." AR 18. In making this finding, the ALJ considered the testimony of the vocational expert, who testified that:

> the claimant worked within the last 15 years in the following occupations:
>
> 1. Human services companion, DOT[] 309.677-010, . . . a light, semiskilled (SVP[] 3) occupation as generally performed pursuant to the DOT and as performed by the claimant;
>
> 2. Foreman/worker, tree service, DOT 408.137-014, . . . a medium, skilled (SVP 6) occupation as generally performed pursuant to the DOT, but actually performed as heavy work as described by the claimant; and
>
> 3. Copier, DOT 249-366-010, . . . a light, unskilled (SVP 2) occupation as generally performed pursuant to the DOT, but actually performed as semiskilled (SVP 4) work as described by the claimant.[4]

AR 18–19.

The ALJ concluded that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2009, through [March 28, 2016,] the date of this decision." AR 19. Therefore, the ALJ denied Plaintiff's applications for disability insurance benefits and supplemental security income, because the claimant was not disabled under sections 216(i) and 223(d) and section 1614(a)(3)(A), respectively, of the Social Security Act. *Id*.

**C.    Plaintiff's Symptom Testimony**

On examination by ALJ Hopson, Plaintiff testified that he last worked as a home support worker for the County of Mendocino "answer[ing] . . . phone[s], . . . [sitting] with mentally ill 51/50 clients[,] and dr[iving clients] to different hospitals" in 2009. AR 27. Plaintiff was terminated from his job because of "budget cuts," but he claims he would have left the job regardless because he could no longer drive, sit, walk, or stand for extended periods of time. AR 28. Previously, Plaintiff held a job "ma[king] photocopies of papers, oversized papers, [and] blueprints" for a church friend. *Id*. Before his copier job, Plaintiff worked as a "foreman and . . . tree climber." AR 29. Plaintiff has not applied for any other jobs after leaving his position with Mendocino County. AR 31. Since

---

[4] "DOT" is an abbreviation for *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991). "SVP" is an abbreviation for "Specific Vocational Preparation," as defined in Appendix C of the DOT.

5

that time, Plaintiff's "source of income" has been his wife's retirement fund. *Id*. Plaintiff has not received any worker's compensation or unemployment benefits since his alleged onset date of disability. *Id*.

Plaintiff currently lives in a house with "three stairs going up to the front porch." *Id*. Plaintiff traverses the stairs by "hang[ing] onto the railing" and uses a prescribed cane at all times. AR 31–32. Plaintiff lives at home with his "wife, . . . daughter-in-law[,] and four grandkids." AR 32. Plaintiff does not take care of his grandchildren. *Id*. Plaintiff has a driver's license and "[o]ccasionally" drives: he explained that occasionally means "[m]aybe [a trip] to the corner store if [he] need[s] a pack of cigarettes[,] . . . but any long trips [his] wife drives and [he] lay[s] in the passenger seat." *Id*. For example, Plaintiff's wife drove him to the administrative hearing. AR 33. Plaintiff has not consumed alcohol since 2011; before then, however, he was drinking on a "daily" basis. *Id*. Plaintiff smokes marijuana every night to "help [him] eat and . . . sleep[, because t]he pain pills that [he is] on don't leave an appetite[.]" *Id*. Plaintiff smokes "[a]bout a pack" of cigarettes per day. *Id*. Plaintiff's highest level of education was twelfth grade of high school. AR 33–34.

On examination by his attorney, Plaintiff testified that he was "having a lot of feet problems and back issues" when he stopped working in 2009. AR 34. Back then, Plaintiff was seeing his doctor for pain treatment and was prescribed medication. AR 35. Plaintiff explained that his "heels get super sore where they can't take the pressure and . . . [he used to experience a] burning and tearing feeling in the bottom of each feet, which ended up being [diagnosed as] plantar fasciitis." *Id*. Plaintiff no longer experiences the tearing and burning as much anymore because of his surgeries, but the heel pain remains "tremendous." *Id*. In addition, Plaintiff suffers residual problems associated with his surgeries to this day. *Id*. Plaintiff has problems "sitting and with [his] heels on the ground[,] . . . standing[,] and walking[.]" *Id*.

Plaintiff does not believe that he could have performed a job that required him "to be on [his] feet for half the workday" in 2009. AR 36. However, Plaintiff believes he could have consistently performed "a job where [he] didn't have to be on [his] feet for more than two hours out of an eight-hour workday" if he could take intermittent breaks standing and walking. *Id*. Plaintiff cannot continuously sit for longer than six hours in an average eight-hour workday, because his "back shoots

pain down [his] right leg and [he] get[s] this burning feeling underneath [his] butt cheek." AR 36–37. Plaintiff's back caused him problems since 2009, when he stopped working in Mendocino County. AR 37. Plaintiff has not had continuous medical insurance since then. *Id*. However, Plaintiff visited a physician for problems with his hands when he regained insurance coverage under Obamacare for a period of time around 2014. AR 38. At that time, both of Plaintiff's hands would "lock up and burn and tingle"; thereafter, he was diagnosed with "severe carpal tunnel, so [he] had surgeries on both hands[.]" *Id*. Plaintiff still experiences "tingl[ing] . . . on [his] right thumb," which "locks up" and causes him to experience "jolts of pain." AR 38–39. "Just holding a cup of coffee will make [Plaintiff's right] thumb lock up. Opening a door[, jar, or cupboard] will hurt it." AR 39. Plaintiff testified that he is unable to hold a "job where [he] had to [grasp, hold, and/or turn] with [his] right hand" for up to two-thirds of an average eight-hour workday, and stated that it would be "tough" to grasp, hold, and/or turn with his right hand for up to two and a half hours per workday. *Id*. However, Plaintiff stated that fingering with his hands, excluding his thumbs, does not cause him problems, although he will "occasionally . . . get a burning pain that goes down from the carpal tunnel." AR 39–40. Plaintiff confirmed that "us[ing his] opposable digit[s] . . . for holding" is the activity that causes the most problems for him. AR 40.

Plaintiff has problems "focusing" and "concentrating." *Id*. Plaintiff is prone to anger, because when he is "in pain constantly it seems like [he] never get[s] a chance to relax or [the pain is] just constantly there." AR 40–41. Plaintiff had a neuroma removed from his left foot, but does not have any residual problems from that surgery now. AR 41. To this day, however, Plaintiff's "hip hurts, [and he] get[s] a burning pain that runs down [his] leg and it feels like somebody [stuck] a lighter underneath [his] butt cheek." *Id*.

**D.** **Vocational Expert ("VE") Testimony**

VE Alan Boroskin testified at Plaintiff's administrative hearing that:

> From '06 to '09 [Plaintiff] worked in human services[ as] a companion, DOT [number] 309.677-010, [a] semiskilled [job] with an SVP of 3, light exertional. In '01 he worked as a foreman and worker for a tree service, DOT 408.137-014, [a] skilled [job] with an SVP of 6, medium exertional per the DOT, heavy [exertional] as described by the claimant. And '04 to '05 he worked doing blueprints and copies

7

at a copy shop, DOT 249.366-010, [a] semiskilled [job] with an SVP of 4 as performed, DOT has [the copier position] at SVP 2 and light exertional in either case.

AR 43–44. ALJ Hopson asked VE Boroskin to assume a hypothetical individual that included, a person who:

> is 45-years-old at his alleged onset date, has a 12th grade education, is literate, speaks English and can perform the demands of work within the following RFC. He can lift and/or carry 10 pounds frequently, 20 pounds occasionally, he can stand, walk or sit six hours out of an eight-hour day with the use of a cane as needed and the ability to stand and stretch every hour estimated to take one to three minutes per hour. He can frequently climb stairs, occasionally climb ladders, ropes and scaffolds, he can frequently balance, stoop, kneel, crouch and crawl and he can do frequent fine and gross manipulation. Could this person do the claimant's past relevant work?

AR 44. VE Boroskin confirmed that the foregoing hypothetical person could perform Plaintiff's past relevant work as a "human services [companion] and the copier . . . per the DOT and as actually performed." *Id*.

For her second hypothetical, ALJ Hopson asked VE Boroskin to build on her first hypothetical by changing the "frequent" level of fine and gross manipulation to "occasional." *Id*. The VE responded that this second hypothetical individual would not be able to perform claimant's past relevant work. *Id*.

However, VE Boroskin stated that this second hypothetical individual could perform:

> jobs requir[ing] only occasional or less use of the hands and fingers, as well as reaching[, including positions as an] investigator [of] dealer accounts, . . . DOT code . . . 241.367-038, . . . [an] unskilled [position], SVP 2, light exertional, [with] 36,600 such jobs nationally. [The hypothetical individual could also work as a] boat rental clerk, DOT 295.467-014, [an] unskilled [position], SVP 2, light exertional, [with] 23,000 such jobs nationally.

AR 45.

ALJ Hopson then asked VE Boroskin to assume a third hypothetical individual who:

> can lift and/or carry 10 pounds frequently, 20 pounds occasionally, . . . can stand and/or walk four hours out of an eight-hour day and sit six hours out of an eight-hour day with the use of a cane as needed and the ability to stand and stretch every hour estimated to take one to three minutes per hour. [The third hypothetical individual] can frequently climb stairs, no ladders, ropes or scaffolds, he can frequently balance, stoop, kneel, crouch and crawl and he can do frequently fine and gross manipulation. Could this person do the claimant's past relevant work?

*Id*. The VE responded that he could not. *Id*. Notwithstanding, VE Boroskin opined that this third hypothetical individual could perform occupations with:

> sit/stand options, that is[,] they can sit or stand at will throughout the day. . . . [O]ne example would be that of a cashier II, . . . a highly restricted range of the cashier II position, only 16% of the full range, and these are typically found in parking garages, minimarts and the sort, a DOT code of 211.462-010, light, [an] unskilled [position], SVP 2, [with] 75,500 such jobs nationally. That is the reduced amount. Another example would be that of an information clerk, DOT 237.367-018, light, [an] unskilled [position], SVP 2, [with] 62,700 such jobs nationally.

AR 46. The VE clarified that he provided a conservative amount of cashier II jobs in the national economy, because the ALJ asked him to hypothesize an individual who used a cane and exercised the stand and stretch option. *Id*.

ALJ Hopson then presented VE Boroskin with a fourth hypothetical by "limit[ing the third hypothetical individual] to occasional fine and gross manipulation," and asked whether this fourth hypothetical person could perform any work in the national economy. *Id*. The VE responded that no such work existed. *Id*. ALJ Hopson then amended her fourth hypothetical to allow the individual to:

> lift and/or carry 10 pounds frequently [and] 10 pounds occasionally, stand and/or walk two hours out of an eight-hour day and sit six hours out of an eight-hour day. He can occasionally climb stairs, no ladders, ropes or scaffolds, he can occasionally balance, stoop, kneel, crouch and crawl, and he's limited to frequent fine and gross manipulation.

AR 46–47. The ALJ also noted that this fourth hypothetical individual would use a "cane and [have] the ability to stand and stretch every hour, estimated to take one to three minutes per hour." AR 47. VE Boroskin testified that this fourth hypothetical individual would not be able to perform claimant's past relevant work, but would be able to work as a "[t]elephone quotation clerk, DOT 237.367-046, [an] unskilled [job], SVP 2, sedentary exertional, [with] 86,000 such jobs nationally. . . . Another example[ is an] order clerk, food and beverage, DOT 209.567-014, [an] unskilled [job], SVP 2, sedentary exertional, 25,800 such jobs nationally." *Id*. However, if the ALJ changed this fourth hypothetical to limit the individual to "occasional" fine and gross manipulation, the VE opined that this person would not be able to perform claimant's past relevant work or any other work in the national economy. *Id*.

The VE testified that a hypothetical individual in any of the above situations would not be able to perform claimant's past relevant work or any other work in the national economy if he were to be off task 20% of the average workday or more, or if he were to be absent three or more days a month. AR 47–48.

On examination by Plaintiff's counsel, VE Boroskin testified that the first hypothetical individual would be precluded from working entirely if he were limited to sitting for a maximum of four hours and walking for a maximum of two hours in an average eight-hour workday. AR 48. The VE clarified that the "cashier II and information clerk" positions, as applied to the third hypothetical individual, would require lifting up to ten pounds. AR 49. VE Boroskin noted that these two occupations are classified as "light" because "they can be done standing." *Id*. However, a cashier II or an information clerk could, in practice, perform his job sitting or standing, and without pushing or pulling. AR 49–50.

E. <u>**Issues Presented**</u>

Plaintiff maintains the ALJ erred by: (1) failing to articulate a clear and convincing reason for rejecting his subjective complaints (ECF No. 16 at 5:13–8:16) and (2) providing an RFC unsupported by substantial evidence (*id*. at 8:18–10:15). The Court examines Plaintiff's arguments below.

    **1.**     **The ALJ's Credibility Determination**

The ALJ must engage in a two-step analysis when evaluating a claimant's testimony concerning pain, symptoms, and level of limitation is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007), *citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony concerning the severity of his

symptoms only by offering specific, clear and convincing reasons for doing so."[5] *Garrison*, 759 F.3d at 1014–15 (internal citation omitted). An ALJ's finding on this matter must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citation omitted).

In weighing a claimant's credibility for cases involving ALJ decisions rendered on or after March 28, 2016, including the present case, the ALJ may consider Plaintiff's: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.[6] SSR 16-3p (eff. Mar. 28, 2016), 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2. Notwithstanding, a claimant's statements about his pain or other symptoms alone will not establish that he is disabled. 20 C.F.R. § 416.929(a)(1); 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). A claimant is not entitled to benefits under the Social Security Act unless

---

[5] In his Cross-Motion to Affirm and Response to Plaintiff's Motion for Summary Judgment and/or Remand, Defendant "maintains that [the clear and convincing reasons] standard [when reviewing an ALJ's decision to discredit a claimant's allegations] is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g) and with agency regulations and rulings . . . ." ECF No. 27 at 4, n.5. Notwithstanding, the Ninth Circuit has employed the clear and convincing reasons standard when reviewing an ALJ's decision to discredit a claimant's allegations. *See Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Robbins v. Soc. Sec. Admin*, 466 F.3d 880, 883 (9th Cir. 2006). This Court is bound to follow Circuit precedent.

[6] SSR 96-7p was superseded by SSR 16-3p on March 28, 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." However, both rulings require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms.

the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Plaintiff argues the ALJ erred by failing to articulate a clear and convincing reason for discounting his subjective complaints. ECF No. 16 at 5:13–8:16. In contrast to this argument, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms at step one of the *Garrison* analysis.[7] AR 16. At step two, however, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible because his "allegations are greater than expected in light of the objective evidence at the hearing level." *Id.*

    a.    <u>An alleged inconsistency between Plaintiff's testimony and the objective medical evidence, standing alone, was not a clear and convincing reason to discount his symptoms complaints</u>.

When determining the extent of Plaintiff's symptoms, the ALJ must consider whether there are any conflicts between Plaintiff's statements and the objective medical evidence. 20 C.F.R. § 416.929(c)(4). However, an ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell*, 947 F.2d at 346–47; *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1999). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). SSR 16-3 further provides that the disability "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

---

[7] In his Cross-Motion and Response, the Commissioner argues that "Plaintiff does not identify which records corroborate his claims of total inability to engage in light level work[.]" ECF No. 27 at 8:23–24 (emphasis added). However, the Regulations do not require a plaintiff to produce evidence of total disability at the first step of the credibility analysis. Instead, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (internal citation and quotation marks omitted). Here, the ALJ found Plaintiff did so. AR 17.

12

Plaintiff claims the ALJ erred because she "violated the long-standing rule in this Circuit that a claimant's testimony may not be rejected solely based on lack of sufficient support from the objective medical evidence." ECF No. 16 at 7:15–17 (internal citations omitted). A review of the Administrative Record shows this to be true. The only explanation the ALJ offered for discounting Plaintiff's symptoms complaints was that his "allegations are greater than expected in light of the objective evidence at the hearing level." AR 16. Although the ALJ carefully summarized the objective medical evidence over two pages (AR 16–17), an "adjudicator may not discredit the claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by the objective medical evidence." (*Bunnell*, 947 F.2d at 343; *see also Rollins*, 261 F.3d at 857; *Fair*, 885 F.2d at 601).[8] "If an adjudicator could reject a claim for disability simply because a claim fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings." *Bunnell*, 947 F.3d at 347.

The Commissioner nevertheless argues that, "contrary to Plaintiff's contention, the ALJ did not solely rely on the objective records to support her assessment, but [instead] looked at the record as a whole," including "the various medical records, objective findings, diagnostic evidence, the opinions of the consultative examiner and State agency doctors." ECF No. 27 at 5:8–11 (internal citation omitted). Even if this were true, however, the ALJ erred at this juncture because she merely summarized the medical evidence and, therefore, failed to provide specific reasons to discount the aspects of Plaintiff's testimony which establish disability. That is, "providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

Even Defendant's Cross-Motion and Response in support of affirming the ALJ's decision only restates the medical evidence, failing to make a substantive argument on the merits. ECF No. 27 at 5:12–7:9. For example, Defendant insists that "the ALJ noted, Plaintiff admitted that his pain

---

[8] Plaintiff argues that to find him not credible, "the ALJ must rely either on reasons unrelated to the subjective testimony such as reputation for dishonesty; on conflicts between his testimony and his own conduct; or on internal contradictions in that testimony, which the ALJ did not do." ECF No. 16 at 7:20–23, *citing Robbins*, 466 F.3d at 884. However, this standard is based on SSR 96-7p and, therefore, does not apply to this matter. At the time of the ALJ's decision in this case, the regulation that governed the evaluation of symptoms claims was SSR 16-3p, which superseded SSR 96-7p on March 28, 2016. *Supra* n. 6.

13

regimen[] worked well and only sought oral pain medication to relieve his symptoms."[9] *Id*. at 8:14–15 (internal citations omitted). However, as Plaintiff correctly notes, "this is post-hoc rationale: [t]he ALJ pointed out some of those facts in summarizing the medical evidence; however, the ALJ evidently did not find those factors to impugn Casey's credibility as the ALJ did not rely on these bases for rejecting Casey's testimony." ECF No. 31 at 4:20–24, *citing* AR 17. Indeed, all the ALJ had to say regarding this issue was that "[t]he claimant reported in January of 2016 that his pain management regimen was working well (he was taking Norco and Soma)." AR 17 (internal citation omitted). This lacks the specificity required by law; that is, "the ALJ must identify what [symptom] testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations omitted). As the Commissioner knows, "[t]he clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015. In sum, the ALJ's credibility finding fails to meet this high evidentiary burden.

Accordingly, the ALJ's sole citation to the purported discrepancy between Plaintiff's testimony and the objective medical evidence did not serve as a clear and convincing reason to issue an adverse credibility finding.

### 2. The ALJ's RFC Assessment

At step four of the sequential evaluation process, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and

---

[9] The Commissioner maintains that "the notion that Plaintiff declined surgery is a factor that weighs against his testimony." ECF No. 27 at 8:19–20 (internal citation omitted). However, the Court does not discuss Plaintiff's decision to decline surgical intervention because the ALJ did not do so in weighing his credibility. Defendant concedes that this was a factor "not explicitly relied upon by the ALJ." *Id*. at 8:18–19 (internal citation omitted). In reviewing an ALJ's decision denying Social Security disability benefits, the court is limited to analyzing only those reasons provided by the ALJ, and may not affirm the ALJ on a ground upon which he did not rely. 42 U.S.C. § 405(g).

14

ambiguity in the evidence. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. Therefore, a reviewing court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

Plaintiff argues that "the ALJ failed to rely on any evidence that a reasonable person would accept in support of [her] RFC assessment." ECF No. 16 at 10:12–13. Plaintiff contends the ALJ erred in interpreting the medical opinion evidence (*id*. at 9:7–17), his testimony (*id*. at 9:18–21), and the raw medical data (*id*. at 10:1–11) when formulating his RFC. As discussed above, the ALJ's credibility finding respecting Plaintiff's testimony was legally insufficient because her discussion was unsupported by substantial evidence. It is true that the ALJ's RFC assessment need only include those limitations found credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, however, it is unclear whether Plaintiff's testimony is credible because the ALJ failed to provide any specific analysis of Plaintiff's credibility. AR 16–17. If Plaintiff's testimony is credible, and supported by substantial evidence, then the ALJ committed reversible error because she was required to include the limitations to which he testified in her RFC assessment. For example, if the ALJ were to credit Plaintiff's testimony that he cannot sit for four hours or more during an eight-hour work day (AR 37), then all of her hypotheticals, each predicated on an RFC assessment of sitting six hours out of an eight-hour work day (AR 44–47), are flawed. Indeed, VE Boroskin confirmed when questioned by Plaintiff's counsel that "changing the sitting tolerance to four hours" under the first hypothetical would "preclude work." AR 48.

The Court therefore finds that the ALJ failed to properly consider Plaintiff's symptoms complaints when formulating his RFC.[10]

---

[10] Because the Court finds that remand for further proceedings is warranted on the basis of the ALJ's unsupported credibility determination, it declines to discuss whether the ALJ appropriately incorporated the medical opinion evidence and clinical findings into her RFC assessment.

## IV. REMEDY REQUEST

Plaintiff requests that this case be remanded with instructions to pay benefits or, in the alternative, for further administrative proceedings. ECF No. 16 at 8:14–16; 10:13–15 (internal citation omitted).

In *Garrison*, the Ninth Circuit:

> devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

759 F.3d at 1020 (internal citation omitted). The Ninth Circuit, "not convinced that the 'crediting as true' doctrine is mandatory," has exercised flexibility on other occasions and "remanded solely to allow an ALJ to make specific credibility findings." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

Here, the credit-as-true standard does not apply because further administrative proceedings concerning Plaintiff's credibility would serve a useful purpose. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("the record raises crucial questions as to the extent of [plaintiff's] impairment given inconsistencies between his testimony and the medical evidence in the record. These are exactly the sort of issues that should be remanded to the agency for further proceedings") (internal citation omitted). Indeed, the present circumstances are distinguishable from other cases that have remanded for an immediate payment of benefits. *Cf. Woody v. Astrue*, 357 F. App'x. 765, 767 (9th Cir. 2009) (remanding for an award of benefits because "no outstanding issues remain[ed] to be resolved"); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (reversing and remanding for determination of benefits because "[t]here are no outstanding issues to preclude [the court] from making a disability determination on the merits.").

Accordingly, the Court finds that remanding this case with instructions to pay benefits is inappropriate and, instead, will remand this case for further proceedings consistent with this Order.

## V. CONCLUSION

The ALJ failed to demonstrate, using the clear and convincing standard, that Plaintiff's testimony should be discounted on the basis of its inconsistency with the objective medical evidence.

The ALJ's RFC assessment was unsupported by substantial evidence because it is unclear on this record whether Plaintiff's symptoms complaints should have been discounted.

## VI. ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment and/or Remand (ECF No. 16) is GRANTED, and that Defendant's Cross-Motion to Affirm and Response to Plaintiff's Motion for Summary Judgment and/or Remand (ECF No. 27) is DENIED.

IT IS FURTHER ORDERED that this matter is remanded for further administrative proceedings consistent with this Order. On remand, the ALJ should determine whether clear and convincing reasons exist to discount Plaintiff's symptoms complaints; assess an RFC after considering Plaintiff's testimony, the medical opinion evidence, and the longitudinal record; and, determine whether Plaintiff is disabled under the Regulations.

DATED this 31st day of March, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE